UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

DR. JOHN A. REPICCI AND LORRAINE REPICCI, individually, and JULIE STONE as Trustee of the JOHN A. REPICCI IRREVOCABLE LIFE INSURANCE TRUST and the REPICCI IRREVOCABLE FAMILY TRUST,

                        *Plaintiffs,*

v.

CHRISTOPHER R. JARVIS and
OJM GROUP LLC,

                        *Defendants.*

**DECLARATION OF RICHARD A. MOORE, ESQ.**

Case No. 1:17-cv-132-WMS

---

**Richard A. Moore, Esq.,** declares under penalty of perjury, pursuant to 28 U.S.C. § 1746:

1. I am attorney duly admitted to practice law in the state of New York and this Court. I am associated with Duke Holzman Photiadis & Gresens LLP, attorneys for Plaintiffs in this lawsuit.

2. I offer this declaration in opposition to OJM Group LLC's ("OJM") motion pursuant to Federal Rule of Civil Procedure ("FRCP") 12(c) seeking an order dismissing the claims against it in this matter.

3. This lawsuit arises out of the conduct of Defendant Christopher R. Jarvis ("Jarvis"), a financial planner, wealth advisor, and insurance professional who advised Plaintiffs with regard to estate and financial planning, created and instituted a multi-faceted estate plan and wealth

1

preservation strategy for Plaintiffs, and explicitly represented that he would monitor the plan on at least a yearly basis.

4. In this lawsuit, Plaintiffs filed claims against Defendant Jarvis for breach of fiduciary duty, negligence, and negligent misrepresentation arising out of Jarvis's negligent actions and omissions with respect to Plaintiffs' investment in two insurance policies that caused them to lose in excess of $1.3 million.

5. At issue in this motion is OJM's liability Jarvis's improper conduct.

6. Jarvis was a principal in Jarvis & Mandel LLC ("J&M"), which "identified itself as providing Integrated Planning Solutions for high net worth individuals." (Dkt. No. 1, Complaint, at ¶ 11).

7. J&M was organized and created under the laws of California in August 1998. (A copy of J&M's papers filed with the California Secretary of State and Ohio Secretary of State are annexed hereto as **Exhibit A**).

8. Based on information that Jarvis filed in this lawsuit, at all relevant times, Jarvis and David Mandell were equal owners of J&M. (See Dkt. No. 15-5, § C and Ex. A).

9. Jarvis's services to Plaintiffs began in approximately 2002 as a principal, agent, and owner of J&M. (Id.; Docket No. 1, Complaint at ¶ 11; Docket Nos. 13-1 to 13-7).

10. "In a series of discussions and other communications Defendant Jarvis and the Repiccis discussed in great detail the Repicci family financial status and the family's long term goals. Defendant Jarvis repeatedly assured Dr. Repicci of his expertise and competency as a wealth advisor, financial advisor and estate planning advisor, with particular expertise working with medical professionals. He also assured Dr. Repicci that he would oversee and monitor any

plan put into place and would continue to advise the Repicci family throughout the duration of any plan." (Complaint, at ¶ 12).

11.     "Eventually in late 2002, as part of a sophisticated wealth/estate planning plan proposed by Defendant Jarvis, the Repiccis were persuaded to purchase two high value life insurance policies (with both John and Lorraine Repicci covered by each policy) recommended by Defendant Jarvis with a total final value of approximately $14 million.  One of the policies instituted was with Massachusetts Mutual Insurance Company ($4 million) and the other was with Lincoln Life & Annuity Company of New York ($10 million), Policy No. 7146026 (hereinafter "Lincoln Policy No. '026")."  (Id. at ¶ 13).

12.     "Subsequent to the purchase of the life insurance policies in 2002, Defendant Jarvis continued to consult with the Repiccis and to propose wealth preservation strategies and plans." (Id. at ¶ 18).  After Plaintiffs purchase of the 2002 policies, through 2006, Jarvis advised Plaintiffs, on J&M letterhead, concerning the status of their insurance policies and provided additional wealth preservation and estate planning strategies that included recommendations regarding taxes, gifting, investments, insurance, the use of an investment LLC, and IRS rules and regulations. (Dkt. 13-5 to 13-8).

13.     In late 2006, Jarvis persuaded Plaintiffs "to purchase an additional Lincoln life insurance policy as part of another sophisticated plan.  Lincoln Policy No. 7317144 (hereinafter "Lincoln Policy No. '144") came into effect on December 21, 2006." (Complaint, at ¶ 19).

14.     O'Dell Jarvis Mandell LLC was created and began operating in 2007. (A copy of OJM's papers filed with the Ohio Secretary of State are annexed hereto as **Exhibit B**; see also Dkt No. 20-4 to 20-6).  The nature of O'Dell Jarvis Mandell LLC's business is stated as "financial planning services."  (Ex. B).

15. Based on information that Jarvis filed in this lawsuit, J&M held a 66% majority ownership interest in O'Dell Jarvis Mandell LLC. (Dkt. No. 15-5, at § C.1-2.). Jarvis, though his ownership in J&M, held a 33% ownership interest in O'Dell Jarvis Mandell LLC. (Dkt. No 23, at 6; Dkt. No. 15-5, at Ex A).

16. Based on the information currently known at this pre-discovery stage, it appears that J&M stopped performing its financial and estate planning business when O'Dell Jarvis Mandell LLC was formed in 2007, and that business continued on under O'Dell Jarvis Mandell LLC. (See Ex. A; Docket No. 13-8).

17. Importantly, after the formation of O'Dell Jarvis Mandell LLC, Jarvis began advising and servicing Plaintiffs as an agent for O'Dell Jarvis Mandell LLC, rather than J&M. **By letter dated December 21, 2007—*on O'Dell Jarvis Mandell LLC letterhead***—Jarvis provided advice and estate planning recommendations concerning an investment LLC, Plaintiffs' trust, gifts, taxes and the 2006 Lincoln Policy. (Dkt. No. 13-8). With regard to the latter, Jarvis, as an agent for O'Dell Jarvis Mandell LLC, presented Plaintiffs investment options, including:

> **Option A – Pay $240,000 before 12/31/07 and $240,000 on January 2, 2008.**
> Lincoln will guarantee $3,100,000 of death benefit if the two of you die now, in 10 years or 45 years from now. This is level and there is no investment risk whatsoever. [(Dkt. No. 13-8).]

18. In that letter, Jarvis went on to "recommend[ed] either A or B." (Id.). Pursuant to that advice of Jarvis and O'Dell Jarvis Mandell LLC, Plaintiffs followed Option A by paying $240,000 before December 31, 2007, and $240,000 on January 2, 2008. (Id.). In other words, Plaintiffs paid $480,000 related to the 2006 Lincoln Policy in direct reliance on Jarvis and O'Dell Jarvis Mandell LLC expertise, representations, and advice.

4

19. After the December 7, 2007, letter that induced Plaintiffs to pay $480,000 related to the 2006 Lincoln Policy to "guarantee" that they receive "$3,100,000 of death benefit if the two of you die now, in 10 years or 45 years from now" "with "no investment risk whatsoever" (id), O'Dell Jarvis Mandell LLC changed its name from O'Dell Jarvis Mandell LLC—the named defendant in this action. (Ex. B; Dkt. Nos. 20-6 and 15-6).

20. It is not in not dispute that O'Dell Jarvis Mandell LLC —the company whose representations directly induced Plaintiffs to invest $480,000 into the 2006 Lincoln Policy—and Defendant OJM, LLC are the same company that simply changed its name. It is also not in dispute that, at all relevant times, Jarvis was an agent, principal, and part owner of that company. (Dkt No. 1, ¶ 8; Dkt. No 15-2, at § C.1-2; Dkt No 23, at 6).

21. In response to various inquiries, Jarvis advised Plaintiffs for the first time in a March 5, 2014, email that the two Lincoln policies were not guaranteed, and that, "By paying about $50k/per year, [Dr. Repicci] can lock in the death benefits for Lincoln on both policies until age 90." (Dkt. No. 13-10).

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and corrected. Executed on June 8, 2017, in Buffalo, New York.

*s/ Richard A. Moore*
Richard A. Moore, Esq.