UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

DR. JOHN A. REPICCI, LORRAINE REPICCI, JULIE
STONE, *as Trustee of the John A. Repicci Irrevocable
Life Insurance Trust*, and JULIE STONE, *as Trustee of
the Repicci Irrevocable Family Trust*,

                                Plaintiffs,                    **DECISION AND ORDER**
                                                               17-CV-132S

        v.

CHRISTOPHER R. JARVIS and OJM GROUP, LLC,

                                Defendants.

## I. INTRODUCTION

In this diversity action, Dr. John A. Repicci and his wife, Lorraine Repicci, together with their daughter Julie Stone, in her capacity as trustee of two Repicci family trusts, allege various state-law claims against Christopher R. Jarvis and OJM Group, LLC arising from certain wealth- and estate-planning advice that Jarvis provided the Repiccis beginning in the early 2000s.

Presently before this Court are three dispositive motions. The first two are directed at Plaintiffs' complaint: Jarvis seeks dismissal for failure to state a claim; OJM seeks judgment on the pleadings. (Docket Nos. 6, 20.) The third is Jarvis's motion to dismiss OJM's cross-claim for failure to state a claim. (Docket No. 15.) For the reasons that follow, Jarvis's motion to dismiss Plaintiffs' complaint is granted in part and denied in part, OJM's motion for judgment on the pleadings is granted, and Jarvis's motion to dismiss OJM's cross-claim is denied as moot.

1

## II.  BACKGROUND

### A.  Facts

The following facts, drawn from the complaint and documents incorporated therein by reference, are assumed true for the purpose of resolving Defendants' motions.[1]  See Bell Atl. Corp. v. Twombly, 550 U.S. 544, 572, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007) ("[A] judge ruling on a defendant's motion to dismiss a complaint must accept as true all of the factual allegations contained in the complaint." (internal quotation marks omitted)).

Dr. John Repicci is a highly respected and successful orthopedic surgeon who practices in Erie County, N.Y.   (Complaint ("Compl."), Docket No. 1-2, ¶¶ 6, 10.)  Christopher Jarvis, who holds an MBA degree and is a Certified Financial Planner, is a wealth advisor and insurance professional who held himself out as having particular expertise advising high-net-worth medical professionals.  (Id. ¶¶ 6, 12.)

In 2001 or 2002, Jarvis solicited Dr. Repicci for wealth and estate planning.  (Id. ¶ 10.)  At that time, Jarvis was a principal in Jarvis & Mandel LLC, which identified itself as providing integrated planning solutions for high-net-worth individuals.[2]  (Id. ¶ 11.)  The Repiccis discussed their financial status and long-term goals with Jarvis, who repeatedly assured them that he would oversee and monitor any financial plan put into place and would continue to advise them throughout the duration of any such plan.  (Id. ¶ 12.)

---

[1] As discussed further *infra*, this Court finds it proper to consider the two Lincoln life insurance policies at issue; a letter dated December 21, 2007; and an email dated March 5, 2019.  (Docket Nos. 6-1, 6-2, 13-8, 13-10.)

[2] Jarvis & Mandell LLC is not a defendant and is represented to be "currently inactive."  (Compl. ¶ 11.)

In late 2002, Jarvis recommended that the Repiccis purchase two high-value life insurance policies as part of a sophisticated wealth and estate plan that he proposed.  (Id. ¶ 13.)  Each of the policies covered both John and Lorraine Repicci.  (Id.)  The Repiccis told Jarvis that they wanted to purchase only life insurance that was guaranteed and valid until age 100 for each of them (then each 66 years old).  (Id. ¶ 14.)  Jarvis assured the Repiccis that the policies he proposed were "guaranteed" and designed to meet their requirements.  (Id.)  He also told the Repiccis that he would continue to monitor the policies and, in the extremely remote and improbable event that the policies failed to perform, he would advise the Repiccis as to how to retain the value of their investments.  (Id.)

In reliance on these representations, the Repiccis purchased the two policies that Jarvis recommended.  (Id. ¶ 15.)  Massachusetts Mutual Insurance Company issued the first policy, which provided $4 million in coverage.  (Id. ¶ 13.)  Lincoln Life & Annuity Company of New York ("Lincoln") issued the second policy, which was to provide $10 million in coverage.  (Id.)  The Repiccis paid the $600,000 premium for the second policy—Lincoln Policy No. 7146026 ("Lincoln-026")—in late 2002.  (Id. ¶ 15.)

After their purchase of Lincoln-026, Jarvis continued to consult with the Repiccis and to propose wealth-preservation strategies.  (Id. ¶ 18.)  In late 2006, Jarvis persuaded the Repiccis to purchase additional life insurance as part of another sophisticated financial plan.  (Id. ¶ 19.)  This additional policy—Lincoln Policy No. 7317144 ("Lincoln-144")—cost $480,000 and became effective on December 21, 2006.  (Id.)  By letter dated

3

December 21, 2007, Jarvis, now a principal in a firm that would become OJM,[3] outlined three available payment scenarios and wrote that if the Repiccis paid the $480,000 premium in two installments—one remitted before the end of the year and the other by January 2, 2008—"Lincoln will guarantee $3,100,000 of death benefit if the two of you die now, in 10 years or 45 years from now.  This is level and there is no investment risk whatsoever."  (Id. ¶ 20.)  The Repiccis paid the premium in full by January 2008.  (Id. ¶ 19.)

About six years later, by correspondence from Jarvis dated March 5, 2014, the Repiccis learned that while their $4 million Massachusetts Mutual policy retained its full value, their two Lincoln policies were not guaranteed and may not have the value that Jarvis had represented.  (Id. ¶¶ 16, 21.)  This was the first the Repiccis learned of the alleged deficiencies in the Lincoln policies.  (Id.)

Approximately one year later, in spring 2015, the Repiccis learned after an independent review of their policies that Lincoln-026 was valueless and that Lincoln-144 had a value far less than the original purchase price.  (Id. ¶¶ 17, 22.)  In addition, the Repiccis learned that absent additional payments, Lincoln-144 could lose all remaining value.  (Id. ¶ 22.)

Plaintiffs claim that they have been damaged by the Repiccis' purchases of both Lincoln policies, including by paying premiums, being deprived of the opportunity to invest

---

[3] As of October 15, 2007, Jarvis was a principal and agent of O'Dell Jarvis Mandell LLC, which was succeeded by Defendant OJM on July 5, 2012.  (Compl. ¶ 8.)

4

their premium payments differently, and in not receiving the benefits of the policies.  (Id. ¶¶ 27, 30, 38, 41.)  They also claim that they have been damaged by Jarvis's failure to monitor the policies and to advise them of any changes.  (Id. ¶¶ 33, 44.)  In all, Plaintiffs claim losses in excess of $1.3 million.  (Id. ¶ 1.)

**B.    Procedural History**

Plaintiffs commenced this action in state court on January 6, 2017, in the Supreme Court of the State of New York, County of Erie, asserting negligence and breach-of-fiduciary-duty claims.  On February 13, 2017, Defendants removed the action to this Court on the basis of diversity jurisdiction.  (Docket No. 1.)

Defendants filed the motions at issue in April and May 2017.  First, Jarvis moved to dismiss Plaintiffs' complaint on April 21, 2017.  (Docket No. 6.)  Jarvis then moved to dismiss OJM's cross-claim on May 12, 2017.  (Docket No. 15.)  OJM moved to dismiss the complaint on May 26, 2017.  All three motions are fully briefed, and oral argument is unnecessary.

## III.  DISCUSSION

Plaintiffs bring six causes of action—four against only Jarvis and two against both defendants.   Against only Jarvis, Plaintiffs allege negligent misrepresentation and omission (first cause of action) and negligent procurement (second cause of action) in connection with the Repiccis' purchase of Lincoln-026, as well as breach-of-fiduciary-duty claims for failing to advise them of changes and available corrective measures regarding the performance of the two Lincoln policies: Lincoln-026 (third cause of action) and Lincoln-144 (sixth cause of action).  (Compl. ¶¶ 23-30, 31-33, 42-44.)  As against both

defendants, Plaintiffs allege negligent misrepresentation and omission (fourth cause of action) and negligent procurement (fifth cause of action) in connection with the Repiccis' purchase of Lincoln-144.  (Id. ¶¶ 34-41.)

Jarvis seeks dismissal of the complaint under Federal Rule of Civil Procedure 12 (b)(6) on the grounds that Plaintiffs (1) failed to adequately state their negligent misrepresentation and omission claims; (2) failed to adequately state their breach-of-fiduciary-duty claims; and (3) failed to bring their claims within the applicable statute of limitations period.  (Docket No. 6.)  OJM seeks judgment on the pleadings on similar grounds.  (Docket No. 20.)  Plaintiffs maintain that they have sufficiently alleged timely causes of action against both Defendants.  In the alternative, Plaintiffs request leave to amend their complaint to cure any pleading deficiencies.

In its answer and cross-claim, OJM asserts a cross-claim for reimbursement, contribution, and indemnification against Jarvis in the event that Plaintiffs recover any judgment against OJM.  (Answer and Cross-Claim, Docket No. 8, ¶¶ 21, 22.)  Jarvis has moved to dismiss this cross-claim on the grounds that it is barred by a pre-existing settlement agreement.

## A.    Jarvis's Motion to Dismiss (Docket No. 6)

Jarvis seeks dismissal of the complaint on the basis that Plaintiffs have failed to sufficiently state their negligent misrepresentation and omission and breach-of-fiduciary-

duty claims and, in any event, all of their claims are untimely.[4]  Plaintiffs maintain that they have adequately stated timely claims for relief.

### 1.  Rule 12 (b)(6) Standard

Rule 12 (b)(6) allows dismissal of a complaint for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12 (b)(6).  In addition, if it appears from the face of the complaint that a cause of action has not been brought within the applicable statute of limitations period, the defense of limitations "may be raised in a pre-answer motion pursuant to Fed. R. Civ. P. 12 (b)(6)."  Santos v. Dist. Council of New York City, 619 F.2d 963, 967 n.4 (2d Cir. 1980); see also Ghartley v. St. John's Queens Hosp., 869 F.2d 160, 162 (2d Cir. 1989).

Federal pleading standards are generally not stringent: Rule 8 requires only a short and plain statement of a claim.  Fed. R. Civ. P. 8 (a)(2).  But the plain statement must "possess enough heft to show that the pleader is entitled to relief."  Twombly, 550 U.S. at 557.  When determining whether a complaint states a claim, the court must construe it liberally, accept all factual allegations as true, and draw all reasonable inferences in the plaintiff's favor.  See ATSI Commc'ns, Inc. v. Shaar Fund, Ltd., 493 F.3d 87, 98 (2d Cir. 2007).  Legal conclusions, however, are not afforded the same presumption of truthfulness.  See Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009)  ("the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions").

---

[4] Jarvis does not challenge the sufficiency of Plaintiffs' negligent procurement causes of action (Claims 2 and 5).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 570).  Labels, conclusions, or "a formulaic recitation of the elements of a cause of action will not do."  Twombly, 550 U.S. at 555.  Facial plausibility exists when the facts alleged allow for a reasonable inference that the defendant is liable for the misconduct charged.  Iqbal, 556 U.S. at 678.  The plausibility standard is not, however, a probability requirement: the well-pleaded allegations in the complaint need only nudge the claim "across the line from conceivable to plausible." Twombly, 550 U.S. at 570.

A two-pronged approach is thus used to examine the sufficiency of a complaint. This examination is context specific and requires that the court draw on its judicial experience and common sense.  See Iqbal, 556 U.S. at 679.  First, statements that are not entitled to the presumption of truth, such as conclusory allegations, labels, and legal conclusions, are identified and stripped away.  See id.  Second, well-pleaded, non-conclusory factual allegations are presumed true and examined to determine whether they "plausibly give rise to an entitlement to relief."  Id.  "Where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," the complaint fails to state a claim.  Id.

In considering a motion to dismiss under Rule 12 (b)(6), "a district court must limit itself to facts stated in the complaint or in documents attached to the complaint as exhibits or incorporated in the complaint by reference."  Kramer v. Time Warner, Inc., 937 F.2d 767, 773 (2d Cir. 1991); see also Blue Tree Hotels Inv. (Can.), Ltd. v. Starwood Hotels & Resorts Worldwide, Inc., 369 F.3d 212, 217 (2d Cir. 2004).  "[W]here a document is not

incorporated by reference, the court may nevertheless consider it where the complaint relies heavily upon its terms and effect," thereby rendering the document "integral to the complaint." <u>Mangiafico v. Blumenthal</u>, 471 F.3d 391, 398 (2d Cir. 2006) (citing <u>Chambers v. Time Warner, Inc.</u>, 282 F.3d 147, 152–53 (2d Cir. 2002)).  But even where a document is "integral" to the complaint, it cannot serve as the basis for dismissal unless there is no dispute as to its authenticity, accuracy, and relevance.  <u>See</u> <u>Faulkner v. Beer</u>, 463 F.3d 130, 134 (2d Cir. 2006) (internal citations omitted).

Here, the parties have submitted numerous documents with their motion papers. But the only documents fairly incorporated into the complaint—and therefore the only documents properly considered—are two items of correspondence that Plaintiffs explicitly reference in the complaint and copies of Lincoln-026 and Lincoln-144 that Jarvis submitted.  The other documents[5] are extraneous and not properly considered at this stage.

Plaintiffs submitted two documents that are referenced in the complaint.  One is a letter written on OJM letterhead, dated December 21, 2007 (Docket No. 13-8), which outlines premium payment options for Lincoln-144 and is incorporated into the complaint by 32-word quotation.  (Compl. ¶ 20.)  The other document is a copy of an email from Jarvis dated March 5, 2014 (Docket No. 13-10), which is not quoted in the complaint at length, but is described by precise date and a summary of the communication.  (Compl.

---

[5] Jarvis submitted documents labeled "correspondence" and "policy illustration," neither of which were considered.  Plaintiffs submitted an affidavit by Dr. Repicci, dated May 11, 2017, as well as various correspondence dated between October 1, 2002, and March 5, 2014, only two of which were incorporated by reference in the complaint.  The affidavit and remaining documents are outside the pleadings and were not considered.  OJM and Jarvis also submitted corporate records and other documents related to business relationships and legal dealings between them, none of which are considered here.

¶¶ 16, 21.)  Because Plaintiffs relied on these documents in drafting the complaint, they are "integral" to it and therefore properly considered.  <u>Chambers</u>, 282 F.3d at 153; <u>see also</u> <u>San Leandro Emergency Med. Grp. Profit Sharing Plan v. Philip Morris Cos.</u>, 75 F.3d 801, 808–09 (2d Cir. 1996) (permissible to consider full text of documents partially quoted in complaint) (collecting cases).

Jarvis submitted copies of the two Lincoln life insurance policies with his motion to dismiss.  (Docket Nos. 6-1, 6-2.)  As the subject of Plaintiffs' claims, these policies are also integral to the complaint.  <u>See</u> <u>Mangiafico</u>, 471 F.3d at 398.  Plaintiffs did not include the policies with their complaint, but neither have they contested the authenticity, relevance, or accuracy of the policy documents[6] that Jarvis submitted.  <u>See</u> <u>Faulkner</u>, 463 F.3d at 134.  Therefore, the policies are also properly considered.

### 2.  Plaintiffs' claims against Jarvis are adequately pleaded.

#### a.  Negligent Misrepresentation and Omission Claims (Claims 1 and 4)

Plaintiffs' first and fourth causes of action allege negligent misrepresentation and omission claims in connection with the Repiccis' purchases of Lincoln-026 and Lincoln-144.  Jarvis contends that dismissal of these claims is warranted on the grounds that Plaintiffs have failed to allege them with sufficient specificity under Rule 9 (b) and have otherwise failed to adequately state them.  Neither of Jarvis's arguments is persuasive.

"Liability for negligent misrepresentation may be imposed 'only on those persons who possess unique or specialized expertise, or who are in a special position of confidence and trust with the injured party such that reliance on the negligent

---

[6] Jarvis also submitted an affidavit from Lincoln's custodian of records averring that the policy records provided to Jarvis's attorney are exact duplicates of the originals.  (Docket No. 19-2.)

misrepresentation is justified.'" Amusement Indus., Inc. v. Stern, 786 F. Supp. 2d 758, 778 (S.D.N.Y. 2011) (quoting Kimmell v. Schaefer, 675 N.E.2d 450, 454 (N.Y. 1996)).

To state a claim for negligent misrepresentation under New York law, a plaintiff must allege "'(1) the existence of a special or privity-like relationship imposing a duty on the defendant to impart correct information to the plaintiff, (2) that the information was incorrect, and (3) reasonable reliance on the information.'" Crawford v. Franklin Credit Mgmt. Corp., 758 F.3d 473, 490 (2d Cir. 2014) (quoting J.A.O. Acquisition Corp. v. Stavitsky, 863 N.E.2d 585, 587 (N.Y. 2007)); see also LBBW Luxemburg S.A. v. Wells Fargo Sec. LLC, 10 F. Supp. 3d 504, 525 (S.D.N.Y. 2014). Whether a special relationship exists is a "fact-intensive, case-by-case inquiry." In re Vivendi Universal, S.A., No. 02 Civ. 5571 (RJH), 03 Civ. 2175 (RJH), 2004 WL 876050, at *13 (S.D.N.Y. Apr. 22, 2004).

Jarvis first argues that dismissal of Plaintiffs' negligent misrepresentation and omission claims is required because Plaintiffs fail to plead them with the specificity required by Rule 9 (b). Rule 9 (b) requires that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Relying on Aetna Cas. & Sur. Co. v. Aniero Concrete Co., Inc. and cases that rely on Aetna, Jarvis maintains that negligent misrepresentation claims, whether alleging fraudulent or negligent conduct, must meet this heightened pleading standard. 404 F.3d 566, 583-84 (2d Cir. 2005) (per curiam).

Aetna, however, has been miscited by a number of courts, including those upon which Jarvis relies. Those courts have mischaracterized Aetna as "conclud[ing] in no uncertain terms . . . that claims for negligent misrepresentation under New York law 'must be pled in accordance with the specificity criteria of Rule 9 (b).'" Schwartzco Enters. LLC

11

v. TMH Mgmt., LLC, 60 F. Supp. 3d 331, 350 (E.D.N.Y. 2014) (quoting Aetna, 404 F.3d at 583); see also Tears v. Boston Sci. Corp., 344 F. Supp. 3d 500, 514 (S.D.N.Y. 2018) ("Negligent misrepresentation claims, too, must meet the Rule 9 (b) standard to survive a motion to dismiss." (citing Aetna)); Spinnato v. Unity of Omaha Life Ins. Co., 322 F. Supp. 3d 377, 403 (E.D.N.Y. 2018) (same); Oden v. Boston Sci. Corp., 330 F. Supp. 3d 877, 900-01 (E.D.N.Y. 2018) (same); AVRA Surgical Robotics, Inc. v. Gombert, 41 F. Supp. 3d 350, 360 (S.D.N.Y. 2014) (relying on Aetna for the proposition that "any claim for misrepresentation—either fraudulent or negligent—must meet Rule 9's heightened pleading standards").  At least one court reads Aetna as definitively holding that Rule 9 (b) applies to all negligent misrepresentation claims under New York law.  See Schwartzco, 60 F. Supp. 3d at 350 ("[C]oncerning the question whether Rule 9 (b) applies to claims for negligent misrepresentation . . . Aetna now controls.").

The trouble is that the Second Circuit's 2-page, per curiam opinion in Aetna does not address Rule 9's application to negligent misrepresentation claims at all, let alone definitively resolve the issue.  See Aetna, 404 F.3d at 566-68.  Courts that have miscited Aetna have mistakenly cited one of three district court decisions appended to the Second Circuit's opinion as background material.  See id. at 567 ("Further background facts, as well as the history of this litigation's motion practice, are set forth in detail in the [three appended district court decisions].")  That decision is neither the one appealed from nor the one the Second Circuit affirmed.[7]  And it is that *district court's* finding concerning Rule

---

[7] Jarvis misreads Aetna too.  He contends that "[t]he lower court opinion approved by the Second Circuit in Aetna held even if a defendant was allegedly only 'careless in imparting words . . . [s]uch a claim must be pled in accordance with the specificity criteria of Rule 9 (b).'"  Memorandum of Law, Docket No. 19, p. 6 (citations omitted).  This is incorrect.  The Second Circuit affirmed the district court's March 30, 1998 Memorandum and Order, which was attached to Aetna as Appendix C.  See Aetna, 404 F.3d at 568

9 (b) that has been mistakenly attributed to the Second Circuit.  See id. at 583; see also Silvercreek Mngmt., Inc. v. Citigroup, Inc., 248 F. Supp. 3d 428, 452-53 (2017) (recognizing the mistaken reliance on Aetna and noting that "the Second Circuit has not spoken clearly to [the application of Rule 9 (b) to negligent misrepresentation claims]"); Arnold Chevrolet LLC v. Tribune Co., No. 04-CV-3097 (DRH)(WDW), 2007 WL 2743490, at *6 (E.D.N.Y. Sept. 17, 2007) (recognizing the mistaken reliance on Aetna).  In actuality, the Second Circuit has not resolved the issue.  See Eternity Global Master Fund Ltd. v. Morgan Guar. Trust Co. of N.Y., 375 F.3d 168, 188 (2d Cir. 2004) ("Rule 9 (b) may or may not apply to a state law claim for negligent misrepresentation.  District court decisions in this Circuit have held that the Rule is applicable to such claims . . . but this Court has not adopted that view . . . .")

In the absence of definitive precedent from the Second Circuit, the most that can be said is that Rule 9 (b) applies when a state negligent misrepresentation claim is premised on fraudulent conduct.  See Tyman v. Pfizer, Inc., 16-CV-6941 (LTS)(BCM), 2017 WL 6988936, at *8 (S.D.N.Y. Dec. 27, 2017) ("'Whether or not Rule 9 (b)'s heightened standard applies to all claims of negligent misrepresentation,'" however, it must be applied where "'the claim sounds in fraud.'" (quoting Riker v. Premier Capital, LLC, 15-CV-8293, 2016 WL 5334980, at *5 (S.D.N.Y. Sept. 22, 2016)); see also Woori

---

(affirming Aniero Concrete Co. v. N.Y. City Constr. Auth., No. 94 CIV. 9111, 95 CIV. 3506, 1998 WL 148324 (S.D.N.Y. Mar. 30, 1998)).  The language that Jarvis quotes above, however, is from the Memorandum and Order appended as Appendix A, which was *not* the subject of the Second Circuit's affirmance.  See id. (appending Aniero Concrete Co. v. N.Y. Constr. Auth, Nos. 94 Civ. 9111, 95 Civ. 3506, 1997 WL 3268 (S.D.N.Y. Jan. 3, 1997) as background material in Appendix A).  Thus, the oft-miscited Rule 9 finding is not from the district court opinion affirmed by the Second Circuit.  See Arnold Chevrolet LLC v. Tribune Co., No. 04-CV-3097 (DRH)(WDW), 2007 WL 2743490, at *6 (E.D.N.Y. Sept. 17, 2007) ("The Circuit expressly affirmed the district court's decision for the reasons stated in the lower court's *March 30, 1998* order, not the *January 3, 1997* order which ruled on the negligent misrepresentation claims." (emphasis in original)).

Bank v. RBS Sec., 910 F. Supp. 2d 697, 705 (S.D.N.Y. 2012) (applying Rule 9 to negligent misrepresentation claim because it "sounds in fraud"); Ellington Credit Fund, Ltd. v. Select Portfolio Servicing, Inc., 837 F. Supp. 2d 162, 200 (S.D.N.Y. 2011) ("Although the Second Circuit has expressly left open the question of whether Rule 9 (b) applies to claims of negligent misrepresentation, district courts in this Circuit have concluded that the Rule is applicable to negligent misrepresentation claims that are premised on fraudulent conduct.") (internal citations omitted). The most prudent course is therefore to apply a case-by-case approach to determine whether a negligent misrepresentation and omission claim sounds in fraud. See Silvercreek, 248 F. Supp. 3d at 453 (employing case-by-case approach).

Here, Plaintiffs expressly disclaim any allegations of fraudulent conduct and there are no allegations of a fraudulent nature contained in the complaint. See Memorandum of Law, Docket No. 14, p. 18. Consequently, this Court finds that the heightened pleading standard in Rule 9 (b) does not apply. See Amos v. Biogen Idec Inc., 28 F. Supp. 3d 164, 172 (W.D.N.Y. 2014) (declining to impose the Rule 9 (b) heightened pleading standard "[b]ecause plaintiff's negligent misrepresentation claim does not rely on proof of fraud"); Silvercreek, 248 F. Supp. 3d at 453 (finding Rule 9 (b) inapplicable to negligent misrepresentation claim where plaintiff expressly disclaimed alleging any fraudulent conduct); In re Rezulin Prods. Liab. Litig., 133 F. Supp. 2d 272, 285 (S.D.N.Y. 2001) ("allegations of intent to defraud or deliberate wrongdoing are not essential" to a claim of negligent misrepresentation, and therefore "Rule 9 (b) is not necessarily applicable to such claims").

14

Jarvis next argues that Plaintiffs fail to adequately plead the first and third elements of their claims.  Again, to state a negligent misrepresentation claim, Plaintiffs must plead "(1) the existence of a special or privity-like relationship imposing a duty on the defendant to impart correct information to the plaintiff, (2) that the information was incorrect, and (3) reasonable reliance on the information."  J.A.O. Acquisition, 863 N.E.2d at 587.  The first and third elements are connected: "the existence of a special relationship is intertwined with issues of justifiable reliance."  LBBW Luxemburg, 10 F. Supp. 3d at 525.

As to the first element, Jarvis argues that Plaintiffs fail to adequately allege a special relationship because they allege no more than a normal insurance agent/customer relationship.  Indeed, "the law of negligent misrepresentation requires a closer degree of trust between the parties than that of the ordinary buyer and seller." Dallas Aerospace, Inc. v. CIS Air Corp., 352 F.3d 775, 788 (2d Cir. 2003); see also Coolite Corp. v. Am. Cyanamid Co., 384 N.Y.S.2d 808, 811 (1st Dep't 1976).

But here, Plaintiffs allege much more than the typical insurance agent/customer relationship.  Plaintiffs allege an ongoing, years-long relationship between the Repiccis and Jarvis that included Jarvis creating, implementing, managing, and promising to monitor multiple sophisticated wealth-strategy plans.  Plaintiffs further allege that the Repiccis shared their personal financial information and goals with Jarvis in great detail and relied on Jarvis's repeated assurances that he would devise and guide their future financial plans.  Drawing all reasonable inferences in Plaintiffs' favor, this Court finds that these facts sufficiently allege a degree of trust between the Repiccis and Jarvis that exceeds the typical buyer/seller relationship.  Consequently, given that Rule 8 requires only notice pleading, and given that the "determination of whether a special relationship

15

exists is essentially a factual inquiry," Suez Equity Inv'rs, L.P. v. Toronto-Dominion Bank, 250 F.3d 87, 104 (2d Cir. 2001), this Court finds Plaintiffs' allegations sufficient at this stage to state the first element of their claim.  See Watson v. Riptide Worldwide, Inc., No. 11 CIV. 0874 PAC, 2013 WL 417372, at *4 (S.D.N.Y. Feb. 4, 2013) (stating that "[c]ourts should be reluctant to dismiss a negligent representation claim so long as the plaintiff has pled basic facts suggesting that a special relationship may exist" (internal citations and quotations omitted)).

As to the second element, Jarvis argues that Plaintiffs have failed to sufficiently allege reasonable reliance on the information he provided.  "In determining whether a complaint adequately pleads justifiable reliance, courts 'consider whether the person making the representation held or appeared to hold unique or special expertise; whether a special relationship of trust or confidence existed between the parties; and whether the speaker was aware of the use to which the information would be put and supplied it for that purpose.'"  Woori Bank, 910 F. Supp. 2d at 705 (quoting Kimmell, 675 N.E.2d at 454); Suez Equity Investors, 250 F.3d at 103.  "Whether the nature and caliber of the relationship between the parties is such that the injured party's reliance on a negligent misrepresentation is justified generally raises an issue of fact."  Kimmell, 675 N.E.2d at 454.

Here, this Court has already found that Plaintiffs adequately allege a special relationship between the Repiccis and Jarvis.  In addition, Plaintiffs adequately allege that Jarvis possessed special expertise: they allege that Jarvis (1) is a Certified Financial Planner, wealth advisor, and insurance professional; (2) holds an MBA; and (3) held himself out as having specialized expertise working with high-net-worth medical

professionals.  Moreover, Plaintiffs allege that Jarvis knew that the Repiccis would rely on his expertise and representations in determining whether to adopt his wealth-strategy plans.  In this Court's view, these allegations sufficiently allege the third element of reasonable reliance.

Finally, Jarvis argues that the negligent misrepresentation and omission claims should be foreclosed as a matter of law because the Lincoln policy terms contradict Jarvis's alleged misrepresentations.  There is, however, a split of authority in New York concerning whether a plaintiff who receives and has the opportunity to read an insurance policy is barred from recovering against an insurance professional.  See Am. Bldg. Supply Corp. v. Petrocelli Grp., Inc., 979 N.E.2d 1181, 1185 (N.Y. 2012) (recognizing split of authority).

In American Building Supply, for example, the New York Court of Appeals found that such a circumstance did not bar the plaintiff's action.  Instead, the court noted that "[w]hile it is certainly the better practice for an insured to read its policy, an insured should have a right to 'look at the expertise of its broker with respect to insurance matters.'"  Id. (quoting Baseball Off. of Commr. v. Marsh & McLennan, 742 N.Y.S.2d 40, 48 (1st Dep't. 2002)).  It further noted that "[t]he failure to read the policy, at most, may give rise to a defense of comparative negligence but should not bar, altogether, an action against a broker."  Id. (citation omitted).  Consequently, at this stage, with adequately pleaded causes of action, this Court cannot conclude that Plaintiffs' negligent misrepresentation and omission claims against Jarvis are barred as a matter of law.

17

Accordingly, for the reasons stated above, this Court finds that Plaintiffs' negligent misrepresentation and omission claims against Jarvis are sufficiently pleaded to overcome Jarvis's pleading-based motion to dismiss.

### b. Breach-of-Fiduciary-Duty Claims (Claims 3 and 6)

Plaintiffs' third and sixth causes of action allege breach-of-fiduciary-duty claims against Jarvis in connection with the Repiccis' purchases of Lincoln-026 and Lincoln-144. Jarvis contends that dismissal of these claims is warranted because Plaintiffs have failed to adequately allege that he owed them a fiduciary duty.  This argument is unpersuasive.

To state a claim for breach of fiduciary duty under New York law, a plaintiff must allege (1) the existence of a fiduciary relationship, (2) misconduct by the defendant, and (3) damages that were directly caused by the defendant's misconduct.  See Kurtzman v. Bergstol, 835 N.Y.S.2d 644, 646 (2d Dep't 2007).

"'[A] fiduciary duty exists where one assumes control and responsibility over another, or where one has a duty, created by his undertaking, to act primarily for the benefit of another in matters connected with his undertaking.'"  Winklevoss Capital Fund, LLC v. Shrem, 351 F. Supp. 3d 710, 719 (S.D.N.Y. 2019) (quoting Abercrombie v. College, 438 F. Supp. 2d 243, 274 (S.D.N.Y. 2006)).  "Put differently, a fiduciary relation exists when confidence is reposed on one side and there is resulting superiority and influence on the other."  Roni LLC v. Arfa, 963 N.E.2d 123, 124–25 (N.Y. 2011) (citations and internal quotation marks omitted).  Such a relationship is "grounded in a higher level of trust than normally present in the marketplace between those involved in arm's length business transactions."  EBC I, Inc. v. Goldman, Sachs & Co., 832 N.E.2d 26, 31 (N.Y. 2005).  Whether a fiduciary relationship exists is generally a fact-sensitive inquiry.  See

id.; see also Hoyle v. Dimond, No. 08-CV-347C, 2013 WL 1152037, at *9 (W.D.N.Y. Mar. 19, 2013).

Jarvis argues that dismissal is required because, at best, Plaintiffs allege nothing more than two arms-length transactions between an insurance agent and a customer, which does not give rise to any fiduciary obligations.  But a fair reading of the complaint reveals otherwise.  As explained above, Plaintiffs allege more than an episodic insurance agent/customer relationship.  Drawing all inferences in Plaintiffs' favor, they allege an ongoing, years-long relationship between the Repiccis and Jarvis that included Jarvis creating, implementing, managing, and promising to monitor multiple sophisticated wealth-strategy plans using his specialized expertise in counseling high-net-worth medical professionals.  Jarvis is alleged to have acted as the Repiccis' wealth-management advisor, and within that role, to have sold them the two Lincoln policies at issue.  It is further alleged that the Repiccis shared their personal financial information and goals with Jarvis in great detail and that Jarvis repeatedly assured them that he would devise, monitor, and guide their future financial plans.  In this Court's view, these allegations sufficiently allege a degree of trust between the parties that exceeds that normally present between parties to an arms-length transaction, and therefore, adequately plead the existence of a fiduciary duty sufficient to survive Jarvis's motion to dismiss.  See EBC I, 5 N.Y.3d at 19.

**3.  The timeliness of Plaintiffs' claims against Jarvis.**

Having found that Plaintiffs' causes of action are adequately pleaded,[8] this Court next turns to Jarvis's arguments that each of the claims is time barred.

### a. Plaintiffs' negligence claims are untimely and must be dismissed.

Jarvis maintains that Plaintiffs' negligence-based causes of action—their negligent misrepresentation and omission claims (Claims 1 and 4) and negligent procurement claims (Claims 2 and 5)—are barred by the applicable statute of limitations.  "Because statute of limitations is an affirmative defense, defendants 'moving to dismiss a cause of action as time-barred bear[ ] the initial burden of establishing that the time to sue has expired.'"  TADCO Const. Corp. v. Dormitory Auth. of State of N.Y., 700 F. Supp. 2d 253, 273 (E.D.N.Y. 2010) (quoting Town of Hempstead v. Lizza Indus., Inc., 741 N.Y.S.2d 431, 432 (2d Dep't 2002)).  Dismissal on statute of limitations grounds may only be granted when it is clear from the complaint that the claim is untimely.  See Harris v. City of N.Y., 186 F.3d 243, 250 (2d Cir. 1999) ("[I]n the statute of limitations context . . . dismissal is appropriate only if a complaint clearly shows the claim is out of time."); Omollo v. Citibank, N.A., No. 07 Civ 9259 (SAS), 2008 WL 1966721, at *3 (S.D.N.Y. May 6, 2008) (same). For the reasons that follow, this Court finds that each of Plaintiffs' negligence-based causes of action is untimely and must be dismissed.

"[I]t is well established that in diversity cases state law governs not only the limitations period but also the commencement of the limitations period." Cantor Fitzgerald

---

[8] One final procedural argument warrants short comment.  Jarvis contends that Plaintiffs' complaint is an impermissible "shotgun pleading," one where each count incorporates and alleges all prior paragraphs. While this practice has been criticized, see e.g., Croons v. N.Y. State Off. of Mental Health, 18 F. Supp. 3d 193, 199-200 (N.D.N.Y. 2014), the complaint here is short and straightforward enough that it is sufficiently clear which allegations are intended to support which claims for relief, see Sec. & Exch. Comm'n v. SeeThruEquity, LLC, 18 Civ. 10374 (LLS), 2019 WL 1998027, at *3 (S.D.N.Y. Apr. 26, 2019).  Re-pleading is therefore not necessary.

20

Inc. v. Lutnick, 313 F.3d 704, 709 (2d Cir. 2002) (citing Ragan v. Merchs. Transfer & Warehouse Co., 337 U.S. 530, 533, 69 S. Ct. 1233, 93 L. Ed. 1520 (1949)); see also Stuart v. Am. Cyanamid Co., 158 F.3d 622, 627 (2d Cir. 1998).  Under New York law, the statute of limitations for a negligence claim is three years.  See N.Y. C.P.L.R. § 214; Chase Sci. Research Inc. v. NIA Grp. Inc., 749 N.E.2d 161, 163 (N.Y. 2001).  "New York follows 'the traditional definition of accrual—a cause of action accrues at the time and in the place of the injury.'"  Cantor Fitzgerald, 313 F.3d at 710 (quoting Global Fin. Corp. v. Triarc Corp., 715 N.E.2d 482, 485 (N.Y. 1999)).

Here, Plaintiffs filed the instant action in state court on January 6, 2017. Consequently, any claims that accrued before January 6, 2014, are barred by the statute of limitations.  Plaintiffs acknowledge this fact, but argue that their negligence claims are nonetheless timely because one or more of several tolling provisions apply—the continuing-wrong doctrine; the equitable-estoppel doctrine; and the continuous-representation doctrine.  Plaintiffs argue that under these doctrines, their negligence-based claims are timely because they did not properly accrue until Jarvis advised them by correspondence dated March 5, 2014, that the Lincoln policies were not guaranteed. As discussed below, however, none of these tolling doctrines apply.  Plaintiffs' negligence-based claims must therefore be dismissed.

### i.     The continuing-wrong doctrine does not apply.

Plaintiffs first invoke the continuing-wrong doctrine, which, when applicable, tolls the limitations period until the commission of the last wrongful act.  See Henry v. Bank of Am., 48 N.Y.S.3d 67, 70 (1st Dep't 2017).  But "[t]he doctrine 'may only be predicated on continuing unlawful acts and not on the continuing effects of earlier unlawful conduct.'"

Id. (quoting Doukas v. Ballard, 972 N.Y.S.2d 143 (Sup. Ct. 2013)).  "The distinction is between a single wrong that has continuing effects and a series of independent, distinct wrongs."  Id. (quoting Ballard).  "[W]here a plaintiff asserts a single breach—with damages increasing as the breach continued—the continuing[-]wrong theory does not apply." Ramiro Aviles v. S & P Glob., Inc., 380 F. Supp. 3d 221, 289 (S.D.N.Y. 2019) (quoting Henry, 48 N.Y.S.3d at 70).

Plaintiffs argue that the continuing-wrong doctrine applies because Jarvis had a continuing duty to advise the Repiccis with regard to their investments.  Their negligence claims, however, are not premised on any continuing wrongs; they each relate to specific and discrete instances of negligence.  The negligence claims allege that Jarvis failed to reasonably and adequately describe and disclose the risks of the two Lincoln policies when the Repiccis purchased them in 2002 and 2006, and that Jarvis knew or should have known that the policies were not suitable to meet the Repiccis' financial goals. (Compl., ¶¶ 24, 29, 35, 40.)  Plaintiffs further allege that their damages arise from the Repiccis' purchase of the policies.  (Id. ¶¶ 27, 30, 38, 41.)  Consequently, because Plaintiffs allege single incidents of negligence, the continuing-wrong doctrine does not apply.

## ii.    The equitable-estoppel doctrine does not apply.

Plaintiffs next argue that the doctrine of equitable estoppel applies to toll the limitations period on their negligence-based claims.  "Under New York's doctrine of equitable estoppel, a defendant can be barred from raising a statute of limitations defense if he fraudulently induces a plaintiff to refrain from filing suit in a timely manner." Tenamee v. Schmukler, 438 F. Supp. 2d 438, 444 (S.D.N.Y. 2006) (citing Kaufman v. Cohen, 760

22

N.Y.S.2d 157, 167 (1st Dep't 2003)). "Equitable estoppel is an extraordinary remedy . . . [that] should be invoked sparingly and only under exceptional circumstances." Twersky v. Yeshiva Univ., 993 F. Supp. 2d 429, 442 (S.D.N.Y. 2014) (internal citations and quotation marks omitted).

The doctrine can apply "where a plaintiff is induced by fraud, misrepresentations or deception to refrain from filing a timely action." Id. But "New York law is clear that the same act of non-disclosure cannot underlie both the argument for estoppel and the related cause of action." Tenamee, 438 F. Supp. 2d at 445 (collecting cases). Rather, a plaintiff seeking to invoke the doctrine of equitable estoppel must "establish that subsequent and specific actions by defendants somehow kept them from timely bringing suit." Zumpano v. Quinn, 849 N.E.2d 926, 929 (N.Y. 2006).

Here, once again, Plaintiffs rely on Jarvis's alleged duty to monitor and advise the Repiccis on the state of their investments to argue that his failure to do so prevented them from learning of the facts necessary to bring their claims. This is unavailing, however, because Plaintiffs' negligence-based claims do not involve Jarvis's alleged continuing duty to monitor and advise the Repiccis. And Jarvis's alleged failure to correctly advise the Repiccis at the time they purchased the two Lincoln policies cannot also serve as grounds to invoke equitable estoppel. See Tenamee, 438 F. Supp. 2d at 445. Consequently, because Plaintiffs fail to plead that Jarvis took any affirmative act of concealment or misrepresentation after the Repiccis' purchases of the Lincoln policies, the doctrine of equitable estoppel does not apply to toll the statute of limitations on their negligence-based claims. See Zumpano, 849 N.E.2d at 929; see also Twersky, 993 F. Supp. 2d at 442.

23

> iii.     **The continuous-representation doctrine does not apply.**

Finally, Plaintiffs seek application of the continuous-representation doctrine, which may toll the limitations period for claims arising from professional services rendered. They argue that under this doctrine, their negligence claims did not accrue until March 5, 2014, when Jarvis finally informed the Repiccis that the Lincoln policies were not guaranteed.

Under New York law, "[c]ontinuous representation tolls the statute of limitations until [the professional] stops rendering professional services to his or her client on a particular matter." Anderson v. Greene, 14 Civ. 10249 (KPF), 2016 WL 4367960, at *23 (S.D.N.Y. Aug. 10, 2016).  Most often seen in legal or medical malpractice cases, the doctrine "recognizes that a person seeking professional assistance has a right to repose confidence in the professional's ability and good faith, and realistically cannot be expected to question and assess the techniques employed or the manner in which the services are rendered." Greene v. Greene, 436 N.E.2d 496, 500 (N.Y. 1982).

But to apply, the continuous representation "must be in connection with the particular transaction which is the subject of the action and not merely during the continuation of a general professional relationship." Zaref v. Berk & Michaels, P.C., 595 N.Y.S.2d 772, 774 (1st Dep't 1993); see also Nowacki v. Closson, No. 99-CV-975, 2000 WL 1335750, at *2 (N.D.N.Y. Aug. 31, 2000).  In other words, "[t]he mere recurrence of professional service does not constitute representation where the later services performed were not related to the original services." Hall & Co., Inc. v. Steiner & Mondore, 543 N.Y.S.2d 190, 192 (3d Dep't 1989).  "Thus, unless services relating to the particular transaction sued upon were rendered within the limitation period, even the defendant's

24

'general and unfettered control of [the plaintiff's] financial, tax and investment affairs' . . . is 'insufficient to sustain the timeliness' of the action."  Booth v. Kriegel, 825 N.Y.S.2d 193, 195 (1st Dep't 2006) (quoting Zaref, 595 N.Y.S.2d at 774).

Therefore, to invoke the continuous-representation doctrine, a plaintiff must "affirmatively demonstrate ongoing representation in connection with the specific matter from which the [negligent professional conduct] claim arose."  Mason Tenders Dist. Council Pension Fund v. Messera, 958 F. Supp. 869, 889 (S.D.N.Y. 1997) (citing Zaref, 595 N.Y.S.2d at 774); Rohe v. Bertine, Hufnagel, Headley, Zeltner, Drummon & Dohn, LLP, 160 F. Supp. 3d 542, 549 (S.D.N.Y. 2016) ("The two prerequisites for continuous representation tolling are a claim of misconduct concerning the manner in which professional services were performed, and the ongoing provision of professional services with respect to the contested matter or transaction." (citation omitted)).

As an initial matter, the parties dispute whether Jarvis is a "professional" to whom the continuous-representation doctrine could apply.  Insurance agents are generally not "professionals" for this purpose, see Chase Sci Research v. NIA Grp., 749 N.E.2d 161 at 165-67, but financial advisors may qualify as "professionals" depending on their education, formal training, licensure, regulation, and governance by a code of conduct and system of discipline, see id. at 166.  See EBC I, 832 N.E.2d at 33 (leaving open the question of whether a financial advisor may be treated as a "professional").  As noted above, the complaint alleges a relationship between the Repiccis and Jarvis that extends beyond the typical insurance agent/customer relationship.  Moreover, Jarvis is alleged to hold an MBA, be a credentialed Certified Financial Planner, and have specialized knowledge working with medical professionals.  These allegations are sufficient at this

stage to find that Plaintiffs have adequately pleaded that Jarvis is a qualifying "professional."

But even with Jarvis qualifying as a "professional," the continuous-representation doctrine does not apply. The particular transactions that are the subjects of Plaintiffs' negligence-based causes of action are the Repiccis' purchases of the two Lincoln life insurance policies. They purchased Lincoln-026 in late 2002 and paid the full premium for Lincoln-144 by January 2008. Nowhere in the complaint, however, do Plaintiffs allege that Jarvis performed any ongoing professional services relating to these two policies (or either of them) after they were purchased. In fact, Plaintiffs' allege the direct opposite: that Jarvis failed to advise them about the policies subsequent to their purchase. (Compl. ¶¶ 33, 44.) The doctrine therefore does not apply. See Ashmead v. Groper, 673 N.Y.S.2d 779, 780 (3d Dep't 1998) ("It is established law that a professional's failure to take action or provide services necessary to protect a patient or client's interests cannot of itself constitute a course of treatment or representation.") (collecting cases).

* * *

Accordingly, for the reasons stated above, this Court finds that each of Plaintiffs' negligence-based causes of action (Claims 1, 2, 4, and 5) is barred by the statute of limitations and must be dismissed.

### b. Plaintiffs' breach-of-fiduciary-duty claims are timely and may proceed.

Turning next to Plaintiffs' breach-of-fiduciary-duty claims, Jarvis maintains that they too must be dismissed as time-barred. Under New York law, a 3-year statute of limitations beginning at the time of the breach applies to breach-of-fiduciary-duty claims that seek only monetary relief. See Weiss v. T.D. Waterhouse, 847 N.Y.S.2d 94, 95 (2d

Dep't 2007); <u>Kaszirer v. Kaszirer</u>, 730 N.Y.S.2d 87, 88 (1st Dep't 2001); <u>see also</u> <u>Barnett</u> <u>v. Countrywide Bank, FSB</u>, 60 F. Supp. 3d 379, 391 (E.D.N.Y. 2014) ("A claim for breach of fiduciary duty generally accrues at the time of breach."); <u>Kaufman v. Cohen</u>, 760 N.Y.S.2d 157, 166 n.3 (1st Dep't 2003) ("Generally, a cause of action for breach of fiduciary duty accrues at the time of the breach . . . ").

Plaintiffs recognize that their breach-of-fiduciary-duty claims are subject to a 3-year statute of limitations but again argue that one or more of the tolling provisions discussed above extends the statute of limitations period.  Further extended discussion of those tolling provisions is not necessary.  In the context of Plaintiffs' breach-of-fiduciary-duty claims, this Court finds that the complaint contains sufficient allegations supporting the possible application of one or more of the proffered tolling doctrines.

Plaintiffs allege that Jarvis failed to abide by his fiduciary duties over the course of his extended relationship with the Repiccis when he failed to advise them that the Lincoln policies were not performing and failed to implement corrective measures.  Liberally construed, Plaintiffs' complaint further alleges that Jarvis breached his fiduciary duties by proposing, implementing, and managing a wealth-strategy plan that was contrary to the Repiccis' financial goals, particularly by including the two allegedly non-guaranteed Lincoln policies in the plan and then failing to monitor those policies as he pledged.  Such an extended relationship with ongoing, repeated failures, with further factual development, could give rise to application of the continuing-wrong or continuous-representation doctrines.  Consequently, this Court finds that dismissal on statute-of-limitations grounds at this stage is not warranted, and Plaintiffs' breach-of-fiduciary-duty claims should proceed to discovery.  <u>See</u> <u>Harris</u>, 186 F.3d at 250 (noting that dismissal

27

on statute-of-limitations grounds is appropriate only when the complaint clearly shows that the claim is untimely).

### 4. Amendment of the complaint would be futile.

Plaintiffs request leave to file an amended complaint "if this Court determines that Plaintiffs have failed to meet the federal pleading requirements for any of their claims." Memorandum of Law, Docket No. 14, p. 25. District courts have broad discretion to grant a party leave to amend its pleadings, and the federal rules dictate that courts "freely give leave when justice so requires." Fed. R. Civ. P. 15 (a)(2); see also Foman v. Davis, 371 U.S. 178, 182, 83 S. Ct. 227, 230, 9 L. Ed. 2d 222 (1962); Ellis v. Chao, 336 F.3d 114, 127 (2d Cir. 2003). But leave to amend need not be afforded when amendment would be futile, such as when the proposed claim could not withstand a Rule 12 (b)(6) motion. See Dougherty v. Town of N. Hempstead Bd. of Zoning Appeals, 282 F.3d 83, 88 (2d Cir. 2002). Here, Plaintiffs' negligence claims are adequately pleaded, but they are untimely, and no amendment of the complaint—indeed, Plaintiffs do not propose any curative amendments— could make them timely. Accordingly, leave to amend will be denied.

## B. OJM's Motion for Judgment on the Pleadings (Docket No. 20)

OJM moves for judgment on the pleadings under Rule 12 (c) of the Federal Rules of Civil Procedure as to both claims asserted against it in connection with the Repiccis' purchase of Lincoln-144: negligent misrepresentation and omission (Claim 4) and negligent procurement (Claim 5). Plaintiffs' theory of liability against OJM is that it is vicariously liable for Jarvis's negligent conduct. But for the same reasons these claims must be dismissed as to Jarvis, they must also be dismissed as to OJM: they are untimely,

and amendment would be futile.  Plaintiffs' claims against OJM will therefore be dismissed, and leave to re-plead as to OJM will be denied.

## C.     Jarvis's Motion to Dismiss OJM's Cross-Claim (Docket No. 15)

Jarvis moves to dismiss OJM's cross-claim, which seeks reimbursement, contribution, and indemnification in the event that Plaintiffs recover any judgment against OJM.  Because the claims against OJM will be dismissed as barred by the statute of limitations, this motion will be denied as moot.

## IV.  CONCLUSION

For the reasons stated above, Plaintiffs' negligence-based causes of action (Claims 1, 2, 4, and 5) will each be dismissed as to both defendants as untimely, and leave to amend will be denied as futile.  Jarvis's motion to dismiss OJM's cross-claim will be denied as moot in light of the dismissal of the claims against OJM.  The only surviving claims are Plaintiffs' third and sixth causes of action for breach-of-fiduciary-duty against Jarvis.

## V.  ORDERS

IT HEREBY IS ORDERED, Defendant Jarvis's Motion to Dismiss (Docket No. 6) is GRANTED in part and DENIED in part.  Plaintiffs' first, second, fourth, and fifth causes of action are DISMISSED as to Jarvis.  Plaintiffs' third and sixth causes of action against Jarvis will proceed.

FURTHER, that Defendant Jarvis's request for leave to file an amended complaint is DENIED as futile.

FURTHER, that Defendant OJM's Motion for Judgment on the Pleadings (Docket No. 20) is GRANTED.  Plaintiffs' fourth and fifth causes of action are DISMISSED as to OJM, and the Clerk of Court is directed to TERMINATE OJM as a defendant in this action.

FURTHER, that Defendant Jarvis's Motion to Dismiss Defendant OJM's cross-claim (Docket No. 15) is DENIED as moot.

FURTHER, that Defendant Jarvis must file an answer within 14 days of the entry date of this decision consistent with Rule 12 (a)(4)(A).

SO ORDERED.

Dated:          January 24, 2020
                Buffalo, New York

                                    William M. Skretny
                                  WILLIAM M. SKRETNY
                                 United States District Judge