UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

DR. JOHN A. REPICCI and LORRAINE REPICCI,
Individually, and JULIE STONE as Trustee of the
JOHN A. REPICCI IRREVOCABLE LIFE INSURANCE     Case No.: 1:17-cv-132
TRUST and THE REPICCI IRREVOCABLE FAMILY
TRUST,

     Plaintiffs,

  v.

CHRISTOPHER R. JARVIS and OJM Group LLC,

     Defendants.
_____


# MEMORANDUM OF LAW OF DEFENDANT CHRISTOPHER R. JARVIS IN SUPPORT OF HIS MOTION FOR SUMMARY JUDGMENT


          WINGET SPADAFORA &
          SCHWARTZBERG, LLP
          45 Broadway, 32nd Floor
          New York, New York 10006
          (212) 221-6900
          Tracy.m@wssllp.com
          *Attorneys for Defendant*
          *Christopher R. Jarvis*

## TABLE OF CONTENTS

Page No.

PRELIMINARY STATEMENT ...................................................................................................1

STATEMENT OF FACTS ............................................................................................................4

    A. The Parties ........................................................................................................................4

    B. The Pension Rescue Plan ..................................................................................................5

    C. The Policies ......................................................................................................................6

PROCEDURAL HISTORY............................................................................................................8

ARGUMENT ..................................................................................................................................9

    I. THE MOTION FOR SUMMARY JUDGMENT SHOULD BE GRANTED AS THERE ARE NO MATERIAL QUESTIONS OF FACT THAT PLAINTIFFS AND MR. JARVIS HAD NOTHING MORE THAN A STANDARD BROKER CLIENT RELATIONSHIP ................................................................................................9

        A. Standard for Summary Judgment..............................................................................9

        B. No Fiduciary Duty Exists As Plaintiffs Have Not Shown That A Special Relationship Exists...................................................................................................10

            1. Mr. Jarvis Received No Additional Compensation ...................................11

            2. Plaintiffs' Lack of Initiative Precludes The Second Factor .......................11

            3. Course of Dealing ......................................................................................12

    II. THE COMPLAINT MUST BE DISMISSED AS THE REMAINING CLAIM FOR BREACH OF FIDUCIARY DUTY IS TIME BARRED ..................................12

        A. Equitable Estoppel Is Inapplicable...........................................................................13

        B. The Continuing Wrong Doctrine Is Inapplicable.....................................................14

      C. The Continuous Representation Doctrine Is Not Present Here .......................14

CONCLUSION................................................................................................................................15

# TABLE OF AUTHORITIES

## CASES

*Airco Alloys Div. v. Niagara Mohawk Power Corp.*, 430 N.Y.S.2d 179 (1980)............................13

*Am. Bldg. Supply Corp.v. Petrocelli Grp., Inc.*, 19 N.Y.3d 730 (2012) ....................................10

*BWA Corp. v. Alltrans Express U.S.A., Inc.*, 112 A.D.2d 850 (1st Dep't 1985)..........................13

*Chase Scientific Research v. NIA Group*, 96 N.Y.2d 20 (2001)..................................................14

*Doe v. Cigna Life Ins. Co.*, 304 F. Supp. 2d 477 (W.D.N.Y. 2004)......................................... 9-10

*Feggins v. County of Niagara*, 2021 WL 5416236 (W.D.N.Y. 2021)..........................................10

*Hall & Co., Inc. v. Steiner & Mondore*, 543 N.Y.S.2d 190 (3d Dep't 1989)...............................14

*Holm v. C.M.P. Sheet Metal, Inc.*, 89 A.D.2d 229 (4th Dep't 1982) ............................................13

*Matthews & Fields Lumber Co. v. New England Ins. Co.*,
    113 F. Supp. 2d 574 (W.D.N.Y. 2001)................................................................................14

*Murphy v. Kuhn*, 90 N.Y.2d 266 (1997)................................................................................ 10-11

*Nowacki v. Closson*, 2000 WL 1335750 (N.D.N.Y. 2000) .........................................................14

*Pike v. New York Life Ins. Co.*, 72 A.D.3d 1043 (2d Dept, 2010).................................................14

*River Seafoods Inc. v. JPMorgan Chase Bank*, 19 A.D.3d 120 (1st Dep't 2005)........................13

*Smith v. Stockwell Constr. Co.*, 2014 WL 459888 (W.D.N.Y. 2014) ...........................................10

*Spinnato v. Unity of Omaha Life Ins. Co.*, 322 F. Supp. 3d 377 (E.D.N.Y. 2018)................... 11-12

*Tracey Road Equip., Inc. v. Ally Fin., Inc.*, 2018 WL 1578160 (N.D.N.Y. 2018).........................12

*Voss v. Netherlands Ins. Co.*, 22 N.Y.3d 728 (2014) ............................................................. 10-11

*Zaref v. Berk & Michaels*, P.C., 595 N.Y.S.2d 772 (1st Dep't 1993) ...........................................14

## RULES

Fed. R. Civ.P. 56.............................................................................................................................1

**PRELIMINARY STATEMENT**

Defendant Christopher R. Jarvis submits this Memorandum of Law in support of his Motion for Summary Judgment dismissing the remaining cause of action against him for breach of fiduciary duty. As set forth below, there is no material issue of fact that Mr. Jarvis's relationship with the Plaintiffs was nothing more than a standard insured/broker relationship and that Plaintiffs have utterly failed to show the heightened "special relationship" needed to impose fiduciary liability against Mr. Jarvis. In addition, it is quite clear that Plaintiffs were on notice of any issue more than six years prior to filing suit and, therefore, their claim is time-barred. Finally, none of the tolling doctrines apply here to extend the statute of limitations. In sum, Plaintiffs' remaining claim fails as a matter of law and should be dismissed pursuant to Fed. R. Civ. P. 56.

This claim relates to the sale of a single life insurance policy in October 2002[1]. Plaintiff John Repicci, MD ("Dr. Repicci") is a renowned orthopedic surgeon who invented a non-invasive method of performing knee replacements. In or about 2002, he was looking for ways to shield his sizeable ($20 million) assets from taxation and to leave as much of it as possible to his heirs. Mr. Jarvis recommended a plan by which a small portion of Dr, Repicci's assets ($4 million) would be removed from his IRA to purchase life insurance. This would have the effect of reducing Dr. Repicci's taxable estate and provide his heirs with death benefits outside of his estate. The final plan contemplated receiving $4 million in death benefits from an insurance policy with Massachusetts Mutual Life Insurance Company ("Mass Mutual") and $5 million from a policy

---

[1] While the Complaint references the sale of a second life insurance policy issued by the Lincoln Life & Annuity Company of New York, Policy No. 7317144 (the "Second Lincoln Policy"), discovery revealed that Mr. Jarvis did not sell the Second Lincoln Policy, nor did he receive any compensation for its sale. Accordingly, it is our understanding that the Plaintiffs are not pursuing a claim against Mr. Jarvis in connection with the Second Policy.

with Lincoln Life & Annuity Company of New York ("Lincoln"). Thus, the final plan would save Plaintiffs $1 million in taxes and provide $9 million in death benefits to the Plaintiffs' heirs.

At the outset of the sale in October 2002, there was an issue that while the death benefit for the Mass Mutual Policy was guaranteed, the death benefit for the Lincoln Policy was not. The Lincoln Policy was only guaranteed for 13 years. However, based on economic assumptions as of 2002, the Lincoln Policy was projected to last 34 years, until Dr. Repicci's 100th birthday. In a letter to Dr. Repicci's accountant, Mr. Jarvis stated that it was unlikely that conditions would change dramatically and that there were options in case conditions did decline, including changing companies, decreasing death benefits and paying additional premium. Thus, Plaintiffs were on notice in October 2002 that more premiums may have to be paid into the Lincoln Policy if economic conditions changed.

From 2003 to 2014, there was no discussion whatsoever between Plaintiffs and Mr. Jarvis regarding the Lincoln Policy. Neither Plaintiffs, nor their accountant or their estate lawyer, had any questions for Mr. Jarvis about the Lincoln Policy. During that time, the annual statements made clear that the Lincoln Policy would last well beyond the 13-year guarantee period but, because of declining interest rates, the policy would lapse in November 2022, more than 20 years after the Lincoln Policy had been purchased, but well before Dr. Repicci turned 100.

In or about January 2014, Dr. Repicci requested information about the policies. In March 2014, eight years before the Lincoln Policy was set to expire, Mr. Jarvis recommended (per his 2002 letter) that Dr. Jarvis pay $50,000 a year in premiums for a number of years in order to lengthen the policy. Dr. Jarvis rejected this recommendation and in 2015, obtained another insurance broker. This lawsuit then ensued.

The sporadic relationship between Plaintiffs and Mr. Jarvis does not support a finding of fiduciary duty. New York law is clear that the general rule is that an insurance broker's duty is to obtain the requested insurance and he does not have an ongoing duty to monitor. While the New York Court of Appeals has imposed a duty to monitor if the broker and insured have a "special relationship," they have also made it clear that such situations are the exception, and not the rule, and that the requisite findings are not present here. The first factor, payment of compensation outside of commission, is clearly not present. The second factor, that the insured raised a question of coverage, is likewise not present as from 2002 to 2014, the insured never raised a single question about coverage. Such lack of initiative/indifference has been repeatedly held to be fatal to such a claim. Finally, the last factor, course of dealing, does not support a finding of a special relationship as it requires dependence of the insured on the broker. Here, the Dr. Repicci was a multimillionaire with access to sophisticated accounting, legal and investment advice. Accordingly, Plaintiffs have not established that there was any fiduciary duty on the part of Mr. Jarvis and the remaining claim against him must be dismissed.

Moreover, any claim is clearly time-barred. As the Plaintiffs seek financial recovery from Mr. Jarvis, the claim for breach of fiduciary duty is governed by a three-year statute of limitations. Plaintiffs have been aware that this is not a guaranteed product since 2002 and have received annual statements every year showing when the policy is set to expire.

Furthermore, the three main tolling provisions for statutes of limitation: (1) equitable estoppel; (2) continuing wrong; and (3) continuing representation, are not present here.

First, equitable estoppel requires a misrepresentation by Mr. Jarvis and it is undisputed that Mr. Jarvis made no such misrepresentation.

Second, courts have held that the continuing wrong does not apply when the alleged wrongdoing relates back to a single act, even when the damages occur after. Here, the evidence points to an alleged issue with the original recommendation. Under like circumstances, courts have routinely rejected application of the continuing wrong doctrine.

Finally, the continuous representation doctrine is clearly inapposite. Preliminarily, we note that the doctrine does not apply to insurance brokers as they are not considered professionals under New York law. Moreover, the representation must relate to the transaction at issue. Here, that is clearly not the case. From 2007 to 2014, Plaintiffs made no inquiry of the policy and, in fact, between 2007 and 2011, there was no communication at all. Accordingly, the continuous representation doctrine does not apply here and the claim is time-barred.

In sum, the undisputed facts show that Mr. Jarvis did not owe, much less breach, any fiduciary duty and that any such claim is time barred. Mr. Jarvis's Motion for Summary Judgment should be granted and the last remaining claim in the Complaint dismissed as a matter of law.

## STATEMENT OF FACTS

The facts in this matter are taken from the Affidavit of Christopher Jarvis, sworn to on February 9, 2022, as well as the deposition testimony and documents produced during discovery that are attached to the Declaration of Matthew Tracy, dated February 11, 2022 and are included with Defendant's Rule 56(a)(1) statement. They can be summarized as follows:

**A. The Parties**

Dr. John Repicci is a very successful orthopedic surgeon and the inventor of a non-invasive knee procedure. In 2002 he was 66 years old with a net worth of $20 million. He was interested in saving on taxes and leaving as much money to his heirs as possible. Lorraine Repicci is his

wife and handled the books for Dr. Repicci's medical practice. Julie Stone is his daughter and acted as office manager. Dr. Repicci testified that he made all of the financial decisions for the practice.

In or about 2002, Christopher Jarvis was a 32-year old financial consultant and insurance broker and a member of Jarvis & Mandell, LLC.

### B. The Pension Rescue Plan

In or about 2000, Mr. Jarvis received a telephone call from Plaintiff, Dr. John Repicci. Dr. Repicci was a very successful orthopedic surgeon in Buffalo, New York. He informed Mr. Jarvis that he had millions of dollars in retirement assets. Because of his significant net worth, he no longer needed these assets, so he asked Mr. Jarvis if he could assist him in transferring these assets to his heirs without incurring income taxes or estate taxes.

In particular, Dr. Repicci had individual retirement plans (the "IRAs") worth $4 million. The IRA assets constituted approximately 20% of Dr. Repicci's overall net worth. The remaining 80% (i.e. $16 million) was controlled by Dr. Repicci and his advisers, accountant Hy Polakoff, attorney Celia Clark, as well as financial advisors at Merrill Lynch.

At the time, the exemption for estate and gift taxes was $600,000, so most of the IRA would be subject to estate taxation upon his death. At this time, the marginal estate tax rate was 60%. In addition, all of the withdrawals from these accounts would also be subject to income taxes. In New York, the combined federal and state income tax rates were close to 50%. The plan that was agreed to by the Plaintiff, his lawyers, a pension consultant and his accountants was to have the Plaintiff create a new Profit Sharing Plan ("PSP) that would allow for the purchase of life insurance (IRAs are not allowed to purchase life insurance). Mr. Jarvis believes that Dr. Repicci's lawyer created a new legal entity to be the sponsor of the new PSP. Then, Dr. Repicci would transfer the

IRA assets into the PSP.  The PSP would then invest most, if not all, of its assets on two separate life insurance policies.  Though these policies were purchased with $3,000,000 of pretax dollars, Dr. Repicci would later sell these policies to a trust for his heirs (which was not part of his estate for estate tax purposes) for considerably less than $500,000.  By doing so, Dr. Repicci would remove $2,500,000 of value from his taxable estate and would eliminate taxable retirement plan withdrawals by the same amount.  Dr. Repicci's estimated savings from such a plan was approximately $1 million in income taxes and $1 million in estate taxes.

### C. The Policies

Mr. Jarvis submitted Dr. and Mrs. Repicci for medical and financial underwriting with various insurance carriers.  One of the carriers, Mass Mutual, was able to issue Plaintiffs a policy with an initial death benefit of $17.5 million.  The policy illustrations contemplated a future reduction in death benefits.  The ultimate death benefits for this particular product was guaranteed.  As Mr. Jarvis was a career agent at Mass Mutual with subsidized office space and various employee benefits based on sales of Mass Mutual products, he had every incentive to purchase as much insurance from Mass Mutual as possible.  However, the underwriters would only offer $17.5 million in death benefits because of the prior health conditions of Dr. Repicci and his wife, Lorraine Repicci.  This necessitated going to another insurance carrier.

The Plaintiffs ultimately went to Lincoln which offered a policy with $25 million in death benefit – in addition to the $17.5 million Mass Mutual was offering.  However, the difference in this policy was that the death benefit was not guaranteed for more than 13 years.  While the current assumptions used in the compliance-approved illustrations in 2002 projected that the policy would last until the Plaintiff turned 100 years of age, Lincoln would not guarantee it.  This was made clear to Dr. Repicci and his accountant, Hy Polakoff, at the time.

In an October 2002 letter to Mr. Polakoff, , Mr. Jarvis went through the fact that the Lincoln Policy was not guaranteed. He raised three future options in the event of future economic changes that would cause the policy to perform below the current assumptions, including: (a) reduce the death benefit; (b) do nothing if the changes only minimally reduced the projected coverage period; and (c) add more premium to the policy. Thus, adding more premium was always a possibility and the Plaintiffs knew this in 2002.

For the Lincoln Policy, the Plaintiffs paid $600,000 in premiums in both 2002 and 2003, but did not pay another $600,000 in 2004. This is significant as the plan was based on Plaintiffs paying $1.8 million in premiums and not $1.2 million. The $600,000 shortfall, together with much lower interest rates, changed the projections of the Lincoln Policy.

In 2003, the expectation was that in 2005, Plaintiffscould exchange the Lincoln Policy for a guaranteed product. However, in or about 2005, Lincoln changed its policy and that was no longer possible. Dr. Repicci was well aware of this and the annual statements that he received would show when the guaranteed provision in the Lincoln Policy was set to expire well before his 100th birthday; upon information and belief (as Mr. Jarvis is no longer the broker of record), it is set to expire in or about November 2022 unless additional funds are put in.

In or about 2006, Mr. Jarvis had discussions with Dr. Repicci about the purchase of a second policy from Lincoln (referenced in the Complaint as the "144 Policy"). However, he did not sell that policy to Plaintiffs and from 2007 to 2011, the broker of record was David Mandell.

From 2007 to 2011, Mr. Jarvis had no contact with Dr. Repicci. For two of those years, he was in a business dispute with his former partners and was prohibited from communicating with Dr. Repicci.

7

Case 1:17-cv-00132-WMS-MJR   Document 65-11   Filed 02/11/22   Page 12 of 19

However, in August 2011, Mr. Jarvis was contacted by Plaintiffs' accountant, Hy Polakoff, and his attorney, Celia Clark. They asked if Mr. Jarvis could assist with issues that arose with the 144 Policy. Initially he could not help because he was not the agent of record. However, in order to allow Mr. Jarvis to service this policy, the Plaintiffs appointed him agent of record in late 2011.

In October 2011, Mr. Jarvis presented Plaintiffs with illustrations for the Second Lincoln Policy, showing that $757,000 would have to be added to the Second Lincoln Policy in order for it to last until 100. Notably, neither Plaintiffs nor their advisors requested a similar analysis for the Lincoln Policy. This was despite the fact they were receiving annual statements showing that the Lincoln Policy would not last until 100.

In early 2014, Plaintiffs requested information about the policies and in March 2014, Mr. Jarvis confirmed that the Lincoln Policies were not guaranteed. He recommended that Plaintiffs pay an addition premium of $50,000 a year that should have the Lincoln Policy last until Dr. Repicci was 90. Plaintiffs rejected this advice.

## **PROCEDURAL HISTORY**

Plaintiffs commenced this action on January 6, 2017, in the Supreme Court of the State of New York, County of Erie, asserting negligence and breach-of-fiduciary-duty claims. On February 13, 2017, Defendants removed the action to this Court on the basis of diversity jurisdiction.

Defendants filed motions to dismiss in April and May 2017. On January 24, 2020, this Court dismissed five of the six causes of action. The Court held that one cause of action, breach of fiduciary duty as against Mr. Jarvis, could proceed with discovery. Discovery was completed on January 5, 2022.

8

# ARGUMENT

## POINT I

### THE MOTION FOR SUMMARY JUDGMENT SHOULD BE GRANTED AS THERE ARE NO MATERIAL QUESTIONS OF FACT THAT PLAINTIFFS AND MR. JARVIS HAD NOTHING MORE THAN A STANDARD BROKER CLIENT RELATIONSHIP

Even after extensive discovery, it remains clear that the Plaintiffs and Mr. Jarvis had nothing more than a standard broker client relationship that cannot support a finding of fiduciary duty. Summary judgment is warranted.

**A. Standard For Summary Judgment**

In deciding motions for summary judgment, this Court has long held that:

> Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment is warranted where the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A "genuine issue" exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986); *Ford v. Reynolds,* 316 F.3d 351, 354 (2d Cir.2003). A fact is "material" if it "might affect the outcome of the suit under governing law." *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505.
>
> In a case where the non-moving party bears the ultimate burden of proof at trial, the movant may satisfy its burden by pointing to the absence of evidence supporting an essential element of the non-moving party's claim. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).
>
> When deciding a motion for summary judgment, a court must view the evidence and the inferences drawn from the evidence "in the light most favorable to the party opposing the motion." *Adickes v. S.H. Kress and Co.,* 398 U.S. 144, 158–59, 90 S.Ct. 1598, 1609, 26 L.Ed.2d 142 (1970). "Only when reasonable minds could not differ as to the import of evidence is summary judgment proper." *Bryant v. Maffucci,* 923 F.2d 979, 982 (2d Cir.1991). The function of the court is not "to weigh the *482 evidence and determine the truth of

> the matter but to determine whether there is a genuine issue for trial." *Anderson,* 477 U.S. at 249, 106 S.Ct. 2505.
>
> Summary judgment is not appropriate if "there is any evidence in the record that could reasonably support a jury's verdict for the non-moving party." *Ford,* 316 F.3d at 354. However, the party against whom summary judgment is sought "must do more than simply show that there is some metaphysical doubt as to the material facts .... [T]he nonmoving party must come forward with specific facts showing that there is a genuine issue for trial." *Caldarola v. Calabrese,* 298 F.3d 156, 160 (2d Cir.2002).

*Doe v. Cigna Life Ins. Co.,* 304 F. Supp. 2d 477, 481-82 (W.D.N.Y. 2004). *See also*, *Feggins v. County of Niagara*, 2021 WL 5416236 at *5 (W.D.N.Y. 2021); *Smith v. Stockwell Constr. Co.*, 2014 WL 459888 at *3(W.D.N.Y. 2014).

Here, as in the above cases of this Court, there are no material facts that support a finding other than that no fiduciary duty existed between the parties and that any claim is time-barred. The Motion for Summary Judgment should be granted in its entirety.

**B. No Fiduciary Duty Exists As Plaintiffs Have Not Shown That A Special Relationship Exists**

The general rule is clear: insurance brokers "have a common law duty to obtain requested coverage for their clients within a reasonable time or inform the client of the inability to do so; however, they have no continuing duty to advise, guide or direct a client to obtain additional coverage." *Voss v. Netherlands Ins. Co.*, 22 N.Y.3d 728 (2014), quoting to, *Am. Bldg. Supply Corp.v. Petrocelli Grp., Inc.*, 19 N.Y.3d 730 (2012). As "[i]nsurance agents or brokers are not personal financial counselors and risk managers ... [i]nsureds are in a better position to know their personal assets and abilities to protect themselves more so than general insurance agents or brokers." *Murphy v. Kuhn*, 90 N.Y.2d 266, 273 (1997).

An exception to this bright line rule is limited to circumstances where a "special relationship" exists between the broker and the insured. To establish an alleged special

relationship, the Plaintiffs must contend that one of the following "three exceptional situations" exist: (1) the agent receives compensation for consultation apart from the payment of the premiums; (2) there was some interaction regarding a question of coverage, with the insured relying on the expertise of the agent; or (3) there is a course of dealing over an extended period of time which would have put objectively reasonable insurance agents on notice that their advice was being sought and specially relied on. *Spinnato v. Unity of Omaha Life Ins. Co.*, 322 F. Supp. 3d 377 (E.D.N.Y. 2018), citing, *Voss*, 22 N.Y.3d at 735.

These situations are rarely applied and considered "exceptional" by New York courts. *See Murphy*, 90 N.Y.2d at 272. "[S]pecial relationships in the insurance brokerage context are the exception, not the norm[.]" *Voss*, 22 N.Y.3d at 736. The insured must carry the burden of demonstrating that such a situation exists. *Id.* at 733.

**1. Mr. Jarvis Received No Additional Compensation**

Plaintiffs cannot satisfy the first factor as it was never alleged and remains undisputed that Mr. Jarvis received no payment in addition to commission.

**2. Plaintiffs' Lack of Initiative Precludes The Second Factor**

The second exception is when a Plaintiff has a specific question or request concerning coverage. However, a "lack of initiative or personal indifference" precludes this exception. *Murphy*, 90 N.Y.2d at 271. In *Murphy*, the New York Court of Appeals declined to hold that the exception applied when a plaintiff "never asked to increase the liability limits [and] there [was] no indication that [he/she] ever inquired or discussed with [the insurer] any issues involving the liability limits of the ... policy." *Murphy*, 90 N.Y.2d at 271.

Here, the Plaintiffs, despite receiving annual statements every year and despite having sophisticated legal and accounting advice, never once discussed and/or inquired about the Lincoln

11

Policy with Mr. Jarvis from 2005 to 2014.  It is clear that they did not depend on Mr. Jarvis for continuing advice and that this factor does not support a finding of s special relationship.

### 3. Course of Dealing

The third factor is a course of dealing that would put an insurance broker on notice that his advice is being relied on.  This exception is typically only found when there is a "longstanding relationship, the client is relatively unsophisticated, and the broker exercises significant decision-making control over the procurement of insurance." *Tracey Road Equip., Inc. v. Ally Fin., Inc., No. 5:18-CV-0011, 2018 WL 1578160, at *4 (N.D.N.Y. Mar. 29, 2018)*.

While the Plaintiffs and Mr. Jarvis had a longstanding relationship, Dr. Repicci was very sophisticated and had independent accountant and legal advice.  As Mr. Polakoff testified, Dr. Repicci was usually the smartest person in the room and Dr. Repicci himself testified that he made all of his own decisions.  Thus, the only element supporting a finding of a special relationship is a longstanding relationship which courts have held is insufficient standing alone.  *Spinnato*, 322 F. Supp. 3d at 393, *citing Scotto Princeton, LLC v. Felsen Assocs., Inc.*, 11 Misc.3d 378 (Sup. Ct. Nassau Co. 2005).

In sum, the evidence in this action conclusively shows that the parties had no more than the typical broker/insured relationship.  Accordingly, the claim for breach of fiduciary duty fails and the Complaint must be dismissed in its entirety.

### POINT II

### THE COMPLAINT MUST BE DISMISSED AS THE REMAINING CLAIM FOR BREACH OF FIDUCIARY DUTY IS TIME BARRED

 In addition to failing as a matter of law, the claim for breach of fiduciary duty is clearly barred by the applicable statute of limitations.

As this Court previously held, any claim that arose prior to January 6, 2014 is barred by the applicable statute of limitations. It is undisputed that the Policy at issue was sold in 2002, and that Plaintiffs were on notice that the Policy was not guaranteed continuously from 2003-2014. Moreover, it is further undisputed that Mr. Jarvis had no contact with the Plaintiffs between 2007 and 2011. Accordingly, none of the tolling provisions raised by the Plaintiffs will apply.

### A. Equitable Estoppel Is Inapplicable

To successfully allege equitable estoppel, "the party seeking estoppel must demonstrate, with respect to himself, a lack of knowledge of the true facts; reliance upon the conduct of the party estopped; and a prejudicial change in position." *River Seafoods Inc. v. JPMorgan Chase Bank*, 19 A.D.3d 120, 796 N.Y.S.2d 71 (1st Dep't 2005) (citing *BWA Corp. v. Alltrans Express U.S.A., Inc.*, 112 A.D.2d 850, 493 N.Y.S.2d 1 (1st Dep't 1985) ); *Airco Alloys Div. v. Niagara Mohawk Power Corp.*, 430 N.Y.S.2d 179 (1980). In addition, the Plaintiffs must assert: (1) [c]onduct which amounts to a false representation or concealment of material facts, or, at least, which is calculated to convey the impression that the facts are otherwise than, and inconsistent with, those which the party subsequently seeks to assert; (2) intention, or at least expectation, that such conduct will be acted upon by the other party; and, in some situations, knowledge, actual or constructive, of the real facts. *BWA Corp.*, 493 N.Y.S.2d 1 (internal citations omitted). State courts have consistently implemented a "rather restrictive" interpretation of the doctrine. *See Holm v. C.M.P. Sheet Metal, Inc.*, 89 A.D.2d 229, 455 N.Y.S.2d 429 (4th Dep't 1982).

None of the above factors are present here. The Plaintiffs received annual statements from Lincoln and thus knew the status of the Policy at all times. Accordingly, as the equitable estoppel doctrine does not apply, the statute of limitations bars Plaintiffs claims.

### B. The Continuing Wrong Doctrine Is Inapplicable

Plaintiffs have argued that the continuing wrong doctrine is applicable here. It is not. It is quite clear that the alleged wrong in this case all relates back to the original recommendation and that the damages in this case all stem from that original alleged wrong. Under these circumstances, the continuing wrong doctrine does not apply here. *See e.g. Pike v. New York Life Ins. Co.*, 72 A.D.3d 1043 (2d Dept, 2010).

### C. The Continuous Representation Doctrine Is Not Present Here

Preliminarily, we note that courts have consistently refused to apply the continuous representation doctrine to insurance brokers like Mr. Jarvis. *Matthews & Fields Lumber Co. v. New England Ins. Co.*, 113 F. Supp. 2d 574 (W.D.N.Y. 2001); *Chase Scientific Research v. NIA Group*, 96 N.Y.2d 20 (2001).

Further, as this Court noted in its original decision, in order to even apply, the continuous representation "must be in connection with the particular transaction which is the subject of the action and not merely during the continuation of a general professional relationship." *Zaref v. Berk & Michaels*, P.C., 595 N.Y.S.2d 772, 774 (1st Dep't 1993); see also *Nowacki v. Closson*, No. 99-CV-975, 2000 WL 1335750, at *2 (N.D.N.Y. Aug. 31, 2000). In other words, "[t]he mere recurrence of professional service does not constitute representation where the later services performed were not related to the original services." *Hall & Co., Inc. v. Steiner & Mondore*, 543 N.Y.S.2d 190, 192 (3d Dep't 1989).

That is precisely the case here. Mr. Jarvis sold the Lincoln Policy in 2002, referenced it in 2003 and 2004, but after 2004, there was absolutely no communication concerning the Lincoln Policy. In fact, between 2007 and 2011, there was no communication at all. Thus, with respect to the Lincoln Policy at issue in this action, there is no continuous representation.

In sum, the claim is time-barred and none of the tolling provisions apply. Accordingly, any claim for breach of fiduciary duty asserted by Plaintiffs is barred by the statute of limitations.

## CONCLUSION

For the foregoing reasons, the motion for summary judgment by defendant Christopher R. Jarvis should be granted in its entirety and this action dismissed.

Dated: New York, New York
February 11, 2022

                                              WINGET, SPADAFORA &
SCHWARTZBERG, LLP

By: _/s/ Matthew Tracy_
Matthew Tracy, Esq.
45 Broadway, 32nd Floor
New York, New York 10006
Telephone: (212) 221-6900
Facsimile: (212) 221-6989
Tracy.M@wssllp.com
*Attorneys for Defendant
Christopher R. Jarvis*