# EXHIBIT N

### Page 1

```
 1  UNITED STATES DISTRICT COURT
 2  WESTERN DISTRICT OF NEW YORK
 3  -------------------------------------------
 4  DR. JOHN A. REPICCI and LORRAINE REPICCI,
    Individually, and JULIE STONE as Trustee of
 5  the JOHN A. REPICCI IRREVOCABLE LIFE INSURANCE
    TRUST and THE REPICCI IRREVOCABLE FAMILY
 6  TRUST,
 7         Plaintiffs,    Case No. 1:17-cv-132
 8  -vs-
 9  CHRISTOPHER R. JARVIS and OJM GROUP, LLC,
10         Defendants.
    -------------------------------------------
11           Examination Before Trial of DR.
12  JOHN A. REPICCI, held before Brooklyn Morton,
13  Notary Public, at MAGAVERN, MAGAVERN & GRIMM,
14  LLP, 1100 Rand Building, 14 Lafayette Square,
15  Buffalo, New York, on July 26th, 2021,
16  commencing at 10:20 a.m., and ending at 12:30
17  p.m., pursuant to notice.
```

### Page 2

```
 1  A P P E A R A N C E S
 2  APPEARING FOR THE PLAINTIFFS:
 3           MAGAVERN, MAGAVERN & GRIMM, LLP
             BY: RICHARD A. GRIMM, ESQ.
 4           1100 Rand Building
             14 Lafayette Square
 5           Buffalo, New York 14203
             (716) 856-3500
 6
    APPEARING REMOTELY FOR THE DEFENDANT
 7  CHRISTOPHER R. JARVIS:
 8           WINGET, SPADAFORA &
             SCHWARTZBERG, LLP
 9           BY: MATTHEW TRACY, ESQ.
             45 Broadway
10           32nd Floor
             New York, New York 10006
11           (212) 221-6900
```

### Page 3

```
 1           W I T N E S S E S
 2  WITNESS          EXAMINATION       PAGE
 3
 4  DR. JOHN A. REPICCI
 5           BY MR. TRACY             5
 6
 7
 8
 9           E X H I B I T S
10  EXHIBIT     DESCRIPTION           PAGE
11  A           Affidavit              13
12  B           Letter                 21
13  C           Letter                 23
14  D           Letter                 30
15  E           Letter                 43
16  F           Letter                 45
17  G           In-force illustrations 53
18  H           Premiums               53
19
20     (Mr. Grimm retained exhibits.)
```

### Page 4

```
 1      DR. JOHN A. REPICCI
 2      MR. TRACY:  Good morning.  We are
 3  attending the deposition of Dr. John Repicci.
 4  My name is Matthew Tracy.  We just met.
 5      I just wanted to note for the record, and
 6  I have discussed this with counsel, we had had
 7  some outstanding document discovery and
 8  interrogatories.  Some of it has been
 9  responded to, some has not.
10      We are going to reserve our right to
11  recall Dr. Repicci after we have an
12  opportunity to review the documents that were
13  produced on Friday and obtain some additional
14  outstanding discovery.  I just wanted to make
15  that clear.  I think the best thing to do, as
16  I indicated to counsel, is go forward today.
17  Get as much done as we can, but with the
18  understanding that I will likely be recalling
19  Dr. Repicci.
20
21  J O H N  A. R E P I C C I,
22  120 Deer Run, Williamsville, New York 14221,
23  having been first duly sworn, was examined and
24  testified as follows:
25
```



Page 17

1      DR. JOHN A. REPICCI
2  A. I made the decisions, yes.
3  Q. And going back to the affidavit for a second,
4     it says, "Jarvis repeatedly assured me of his
5     expertise and competency as a wealth advisor."
6        How did he repeatedly assure you?  Would
7     he do that on the phone, in writing, or how
8     did that --
9  A. Well, I think he initially presented at a
10    medical conference of some sort where I heard
11    him speak and then I heard him before and I
12    was very impressed with his overall
13    presentations and so forth.  And we are
14    talking 20 years ago, but I was very impressed
15    with his organization and with his
16    presentations and also with his associates,
17    who I also discussed things with.
18 Q. Okay.  And when you say "associates," who
19    would that be, if you recall?
20 A. I think it was Mandell and there was also a
21    lawyer involved.  A female lawyer.
22 Q. Would that be Celia Clark?
23 A. Celia Clark, yes.
24 Q. Okay.  And he -- I am going back to the
25    affidavit again.  "He also assured me that he

Page 18

1      DR. JOHN A. REPICCI
2     would oversee and monitor any plan we put in
3     place and that he would continue to advise us
4     throughout the duration of any plan as
5     demonstrated by the various correspondence."
6        My question is:  Other than the
7     correspondence, did he give you any other oral
8     assurances that he was going to oversee and
9     monitor any planning of yours?
10 A. Yeah.  He was a very impressive person and he
11    had great recommendations.  The book looked
12    good and his partner, Mandell, and that lawyer
13    were quite good and I was very impressed.
14 Q. Not exactly my question.  I understand that,
15    but my question is:  Did he orally assure you
16    at any time that he was going to oversee and
17    monitor a retirement plan?
18 A. Yes.  That was all part of the program.
19 Q. When did he orally --
20 A. When he initiated this program, he assured me
21    that he would take care of this corner.
22 Q. He would take care of this corner.  What did
23    you understand that to be?
24 A. These life insurance policies that we were
25    dealing with and he was also discussing

Page 19

1      DR. JOHN A. REPICCI
2     various estate plan issues, but he was
3     supposed to be taking care of the life
4     insurance.
5  Q. Okay.  He is taking care of the life
6     insurance.  And it is fair to state that the
7     -- well, let me ask you this.  I will ask it
8     this way, and correct me if I am wrong.  My
9     understanding of this is they were going to
10    take approximately $4 million of your IRA, put
11    that into insurance and take it out of your
12    estate and your heirs would receive about
13    approximately $14 million in tax free
14    benefits.  Is that the basis part of the plan?
15 A. I don't recall all of those details, but that
16    sounds like the basis, yes.
17 Q. And was one of the goals to reduce your income
18    tax on the IRA?
19 A. The number one goal was to provide assets to
20    my heirs and reduce the tax, yes.
21 Q. Okay.  And were your taxes reduced as a result
22    of this?
23 A. I think so, but I don't really follow the
24    taxes.  I am a doctor.  I don't do that.
25 Q. Who would know that?

Page 20

1      DR. JOHN A. REPICCI
2  A. Hy Polakoff and my wife would know the
3     financial aspects.
4  Q. Now, to the best of your recollection, we are
5     now into 2002 and Chris Jarvis is trying to
6     obtain insurance for you did you -- strike
7     that.
8        How many times in 2002 do you think you
9     physically met with Chris Jarvis?
10 A. I don't really recall, but I did meet with him
11    several times and I was impressed.
12 Q. Okay.  At those meetings, to the best of your
13    recollection, was either your wife or Hy
14    Polakoff present at any of those meetings?
15 A. I don't recall.  Hy Polakoff would not be, to
16    my understanding.  My wife might be
17    incidentally.
18       MR. TRACY:  Okay.  Richard, if you could
19    show Dr. Repicci, it is the October 1, 2002,
20    letter.  It is with Exhibit A to the
21    affidavit.  It is Document 13-1.  It was filed
22    on 5/12/17.  We will mark this as Exhibit B.
23       MR. GRIMM:  I have this as -- mine has
24    Exhibit A from the affidavit on it.  Is it
25    okay if I mark it with that Exhibit A on it or



Page 29

1  DR. JOHN A. REPICCI
2  that Hy Polakoff would have to review certain
3  things?
4  A. No.
5  Q. Do you recall giving Chris Jarvis Hy
6  Polakoff's contact information?
7  A. Not specifically, no.
8  Q. Do you recall talking to your wife that we
9  needed to refer Chris Jarvis over to Hy
10 Polakoff for any reason?
11 A. No.
12 Q. Do you recall how much money was supposed to
13 be -- premium was supposed to be paid into the
14 Lincoln policy?
15 A. No.
16    MR. TRACY: Richard, I don't know if you
17 have this document yet. It kind of came in
18 late. What I will do is send it to you. If
19 it hasn't been printed out yet, let me know.
20 It is a production from Friday. I printed out
21 pages 26, 27, 28, and 29.
22    MR. GRIMM: Yeah. I didn't see that
23 production from Friday. Rick was doing that.
24 Can you tell me, did you send it to me?
25    MR. TRACY: I am sending it to you right

Page 30

1  DR. JOHN A. REPICCI
2  now. I sent it to Richard this morning.
3     MR. GRIMM: Okay. It was not in the
4  uploaded documents, was it?
5     MR. TRACY: I think it was late.
6     MR. GRIMM: Can we go off?
7     MR. TRACY: Yeah. Let's go off. It is
8  a good time for a break anyway.
9
10    (Recess was taken.)
11    (Exhibit D was marked for identification.)
12
13    BY MR. TRACY:
14 Q. And, Doctor, do you recall this document?
15 A. I believe I did see this. Yes.
16 Q. Okay. And if you can, for a second, go back
17 to your affidavit, which is Exhibit A, I
18 believe.
19    If you can show the witness his affidavit.
20 And if you go to paragraph 7 and if you read
21 it, it says: "By letter dated October 9,
22 2002, Jarvis sent a letter (shared with me) to
23 Hy Polakoff, our accountant, to address
24 concerns about the investment, including to
25 give an explanation of the different numbers

Page 31

1  DR. JOHN A. REPICCI
2  in the illustrations." And then the next
3  sentence is: "In particular, Jarvis addressed
4  my and Polakoff's concerns that the
5  representations and illustrations that Jarvis
6  provided with regard to the insurance policies
7  were inconsistent with some of the insurance
8  company's illustrations."
9     Do you recall what those inconsistencies
10 were?
11 A. Yeah. My understanding was the policy was
12 lasting until I was 95 years old and it looked
13 like the policy wasn't going to last to 95
14 years of age.
15 Q. How did you reach that conclusion?
16 A. Looking at these numbers and your exhibit
17 showing 14 years or something, that I had a
18 problem.
19 Q. Okay. And when did you review these
20 illustrations?
21 A. I don't recall specifically.
22 Q. Prior to 2002 had you ever purchased life
23 insurance before?
24 A. No.
25 Q. Prior to 2002 had you purchased any type of

Page 32

1  DR. JOHN A. REPICCI
2  insurance?
3  A. Not that I recall, other than the liability
4  insurance for vehicles and things.
5  Q. And what was your understanding based on the
6  illustration of how much premium was supposed
7  to go into the policy?
8  A. I really didn't deal with the premiums. I
9  didn't write checks to do that. Whenever
10 these would come, I would just give it to my
11 wife and say, take care of it and then it
12 would be paid. So the exact payments I
13 wouldn't know, but I did have an issue with
14 these things and Chris Jarvis assured me that
15 this was not a problem and so that was all I
16 was concerned about.
17 Q. Okay. Let's me ask you this: If you look at
18 the first page, it seems to indicate to me it
19 would be $600,000 for the first three years of
20 the policy. Does that refresh your
21 recollection?
22 A. I would have -- no. Whatever would be in
23 terms of financial payments, I would just say
24 yes and give it to my wife and she would take
25 care of the payments. The numbers, I wouldn't

